IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2017 FEB 17 P 2 53

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| HAROLD RAY, on behalf of himself and all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | 2:17-cv-99-WHA |
| | : | CLASS ACTION COMPLAINT |
| v. | : | |
| | : | |
| NATIONSTAR MORTGAGE | : | |
| LLC OF DELAWARE, D/B/A | : | |
| CHAMPION MORTGAGE | : | |
| COMPANY, | : | |
| Defendant. | : | |

Plaintiff, Harold Ray, hereby file this Class Action Complaint against Defendant Nationstar Mortgage, LLC of Delaware, d/b/a Champion Mortgage as follows:

## PARTIES

1.    Plaintiff, Harold Ray is an individual and resident of Barbour County, Alabama.

2.    Nationstar Mortgage LLC of Delaware, d/b/a Champion Mortgage Company ("Champion") is one of the largest mortgage servicers in the United States, with a servicing portfolio in excess of $400 billion and more than 2.4 million customers.  Nationstar has its principal place of business in Lewisville, TX.  Champion Mortgage Company is a division of Nationstar Mortgage LLC and specializes in servicing reverse mortgage products.  Champion claims to "meet the reverse mortgage needs of our customers."

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction over this class action pursuant to 28 U.S.C. §

1332(d).  Plaintiff and Members of the Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs, and Members of the Class of plaintiffs are citizens of a state different from any defendant.

4.      Venue is proper in this District under 28 U.S.C. § 1391(a)(1), because Champion regularly conducts business in this District and significant events giving rise to this case took place in this District.

## NATURE OF THE CASE

5.      Nationstar Mortgage LLC of Delaware, a self-described "leader in the home loan servicing industry," services mortgage loans for more than 2.7 million customers, totaling hundreds of billions of dollars.  Champion, a division of Nationstar, specializes in servicing "reverse mortgages" - loans available to homeowners 62 years or older that allow them to convert part of the equity in their homes into cash.

6.      A reverse mortgage or Home Equity Conversion Mortgage ("HECM") is a type of home loan for older, cash-strapped homeowners (62 years or older) requiring no monthly mortgage payments.  Reverse mortgages allow these homeowners to borrow against the equity in their homes while still continuing to live there and keep the title to their homes.  Borrowers are responsible for property taxes and homeowner's insurance, and for maintenance costs on the home.  Reverse mortgages allow elders to access the home equity, and defer payment of the loan until they pass away, sell, or move out of the home.  Because there are no required mortgage payments on a reverse mortgage, as interest accrues, it is added to the loan balance each month. The rising loan balance can eventually grow to exceed the value of the home, particularly in times of declining home values or if the borrower continues to live in the home for many years.

However, the borrower (or the borrower's estate) is generally not required to repay any additional loan balance in excess of the value of the home.

7.      A reverse mortgage contract between a lender and a borrower consists of two documents: the promissory note ("Note") and the mortgage or deed of trust ("Security Instrument"). These contracts, which bind the lender as well as the borrower, contain terms governing what the lender may do in the event of a purported default. A default on the part of the borrower can occur in a number of ways, including most commonly: failure to pay mandatory taxes on the property, failure to keep up with the regular payment of insurance on the property, failure to pay home association fees, vacating the home, or failing to properly maintain the property.

## GENERAL FACTUAL ALLEGATIONS

8.      One of the terms governing what the Champion may do in the event of a default allows it to conduct inspections to ensure the home is occupied and in good condition. The right to inspect is designed to protect the lender's interest in the property.

9.      The Security Instrument also provides any such amounts disbursed by the lenders/servicers, including inspection fees, if performed after proper notice and in compliance applicable regulations, may shall become additional debt of the borrower secured by the Security Instrument and will bear interest at the Note rate from the date of disbursement.

10.     However, by the very terms of the reverse mortgage notes and Department of Housing and Urban Development ("HUD") regulations, Champion is not permitted to assess borrowers' accounts for inspection fees that are unnecessary or unreasonable. *HUD Servicing Guidelines, Chapter 9, § 4330.1, 9-9 Inspection, Preservation and Protection Requirements, A. Inspections (c).*

11.     For example, absent a specific finding of need by a local HUD office, the shortest

period between inspections authorized by the HUD servicing guidelines is 25 days:

> Generally, reimbursement will be limited to one inspection for each
> 30-day cycle. This inspection should not be earlier than 25 days from
> the last inspection or later than 35 days after the last inspection.  A
> distinction must be made between those items which are required and
> those which are merely recommended.  Only where a local HUD
> Office has identified a need to inspect more frequently, and has made
> this a requirement, will a mortgagee be reimbursed for these additional
> inspections. *HUD Servicing Guidelines, Chapter 9, § 4330.1, 9-9
> Inspection, Preservation and Protection Requirements, A. Inspections
> (c)(2)(a).*

12.     Further, multiple inspections are only allowed when the mortgaged property is

vacant:

> Where the mortgage is in default and the mortgagee has established
> that the mortgaged property is vacant, mortgagees shall inspect the
> mortgaged property every 25 to 35 days. *HUD Servicing Guidelines,
> Chapter 9, § 4330.1, 9-9 Inspection, Preservation and Protection
> Requirements, A. Inspections (c).*

13.     However, even before a series of inspections may begin, under HUD servicing

guidelines, the mortgage must be in default, and Champion is required to determine the

Plaintiff's home was vacant/abandoned by making a phone call and performing a visual

inspection to ensure the property had become vacant/abandoned:

> When the mortgage is in default and a payment is not received within
> 45 days of the due date and efforts to reach the mortgagor or occupant
> at least by telephone have been unsuccessful, the mortgagee must
> perform a visual inspection of the mortgaged property to determine if
> it has become vacant or abandoned. *HUD Servicing Guidelines,
> Chapter 9, § 4330.1, 9-9 Inspection, Preservation and Protection
> Requirements, A. Inspections (a)(1).*

14.     Finally, the Plaintiff's mortgage contract provides a safeguard against multiple

unnecessary inspections by requiring notice to the borrower. Paragraph 6 of Mr. Ray's Mortgage

states:

Page | 4

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times **provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property.** If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

15.     However, Champion has completely disregarded its contractual requirement by conducting multiple "drive by" inspections with no notice to the borrower.

16.     Champion, with its affiliated companies, intercompany divisions, and vendors, developed and formed a process designed to game the system by systematically side-stepping (a) the prohibition of more than one inspection in a 25 day period, (b) the requirement the property must be vacant in order to conduct multiple inspections, (c) the requirement of vacancy verification, and (d) contractual notice requirements.

17.     In order to increase profits, Champion orders unnecessary property inspections, and imposes the fees for these inspection on the borrower, regardless of need in direct violation of HUD guidelines and the Mortgage contract.

18.     Champion targets elderly homeowners who have purportedly defaulted on some obligation under their reverse mortgages, then charges them repeated, unnecessary, and unreasonable "drive-by" property inspection fees for inspections that may or may not have actually occurred, and to the extent they did occur, lasted only a few seconds. In doing so, Champion generates fee income on these unnecessary inspections and other default-related services.

19.     This case concerns dishonest, intentional practices committed by Champion, designed to maximize fees assessed on borrowers' accounts when they are already struggling with a potential default.

20.    Champion, along with its business partners, utilizes automated software to order and/or conduct repeated, unreasonable, and unnecessary "property inspections" with the effect of maximizing fee income and cheating borrowers who can least afford it.

21.    Further, when reverse mortgage borrowers go into potential "default" for any reason, such as non-payment of property taxes or homeowner's insurance, Champion assesses fees on borrowers' accounts for "drive-by" property inspections without ever giving the borrower notice as required under the reverse mortgage contract.

22.    A close business partner of Champion, Compu-Link Corporation, d/b/a Celink, is the largest independent servicer of reverse mortgages in the United States, and its clients include regional and nationwide lenders, banks, and insurance companies. Champion    contracts    with Celink for reverse mortgage services, including ordering property inspections.

23.    Celink developed and uses a proprietary, Java-based reverse mortgage servicing platform, ReverseServ™, for servicing FHA HECM loans, as well as proprietary reverse mortgage products. Celink's principal place of business is in the state of Washington.

24.    To maximize profits, Champion assigns the complex task of administering the millions of loans serviced by the company to Celink. The ReverServ™ platform is designed to manage borrowers' accounts and assess fees, according to protocols and policies designed by Celink's customer, Champion.

25.    Guidelines set by Champion for managing its portfolio of reverse mortgages are imported into ReverseServ™. Reverse mortgages serviced by Champion are then automatically managed by the platform according to those guidelines. For example, among other things, the guidelines instruct the platform when and how to order property inspections and to impose default-related fees, including inspection fees. As a result, Champion orders inspections and

assesses fees for inspections and other default-related services on borrowers' accounts through these systems which do not adequately consider or account for whether the process violates the terms of the Note or the Security Instrument, HUD requirements, and significantly, whether there is a reasonable need for the inspections.

26.    Rather than being motivated by a general or specific concern that a lender's interest in a property is at risk, Champion systematically orders property inspections at pre-set intervals to maximize company profits, without regard to the results of initial inspections that reveal there is no risk or problem whatsoever with the condition or occupancy of the property.

27.    The reverse mortgage agreements governing loans serviced by Champion do not permit such fees to be assessed on borrowers' accounts when they are unreasonable and unnecessary and do not allow Champion complete discretion to conduct and charge a borrower for inspections.  Instead, the requirement that Champion provide notice to the reverse mortgage borrower is a safeguard against unreasonable and unnecessary inspection and inspection fees. However, based on the process implemented, Champion ignores their duty to provide notice to the borrower; Mr. Ray and reverse mortgage customers nationwide have and continue to be fleeced by Champion's unnecessary inspections.

28.    Champion's automated system, which orders property inspections without regard to reasonableness or need or the results of previous inspections, then conducts those inspections without notice to elderly reverse mortgage customers nationwide, and therefore improperly profits from these inspections at the borrowers' expense.

29.    Champion's system improperly orders property inspections and bill borrowers for inspection fees without accounting for: (a) whether the inspections may be legally charged to borrowers; (b) whether Defendant has reason to believe the property was not being adequately

maintained, (c) whether Defendant has reason to believe the property is abandoned; (d) whether the frequency of the property inspections exceed the standards of reasonableness and appropriateness; and (e) whether the borrower had been properly been given prior notice.

30.      By and through the use of Celink's proprietary reverse mortgage servicing platform, ReverseServ™, Champion routinely and systematically assess borrowers' accounts for property inspections that are unreasonably frequent, then unlawfully charge borrowers for those unnecessary inspections.

31.      When a loan is in alleged default, the purported purpose for the property inspections is to ensure that, lenders' investment is protected; namely, among other things, that the property is occupied and appropriately maintained, as required by the reverse mortgage Note and Security Instrument.

32.      Upon information and belief, Champion profits from property inspections because it charges more to borrowers for property inspections than it pays Celink.

33.      Although such inspections purportedly are conducted to guard against property loss, Champion's system is not designed to limit them to this purpose; rather, the practices are systematic and designed to ensure that these fees are charged to as many accounts and as many times as possible, without notice and even if the inspections are unnecessary.

34.      Champion sometimes orders and assesses fees for property inspections more than once in any twenty-five (25) day period for no legitimate reason in direct violation of multiple HUD servicing guidelines.

35.      Fees for property inspections have added hundreds or even thousands of dollars to

borrowers' reverse mortgage balances over time, compounded by interest on the fees. The unnecessary and unreasonable property inspection fees add to borrowers' indebtedness and/or reduce the equity a borrower has in the property.

36.    For example, if the property is foreclosed upon, any equity borrowers have in their home is applied toward these unnecessary and unreasonable property inspection fees, causing out of pocket money losses when the property is sold, and profit to Champion.

37.    Even if the property is not foreclosed upon, when a reverse mortgage matures for other reasons (such as death, or a borrower's decision to sell the property), Champion is paid its costs, including inspection fees.

### FACTUAL ALLEGATIONS – Plaintiff Harold Ray

38.    Plaintiff Harold Ray is an 81-year-old homeowner residing in Eufaula, Alabama and since 2009 has a Home Equity Conversion Loan ("HECM"), a/k/a a reverse mortgage on his home of 18 years. **Exhibit A**.

39.    Mr. Ray's reverse mortgage was transferred to Champion in 2012. **Exhibit B**. The mortgage was assigned to Champion in 2015. **Exhibit C**.

40.    In 2014, Mr. Ray's reverse mortgage was considered in default for alleged failure to pay real property taxes and/or homeowner's insurance premiums.

41.    Seizing upon this alleged delinquency, Champion, as it has done to thousands of senior reverse mortgage borrowers, ordered and allegedly conducted more than twenty (20) property inspections on his home; each without any prior notice required by the reverse mortgage Note and Security Instrument.

42.    Champion then charged Mr. Ray for these unnecessary and unreasonable property

inspections, without providing him prior notice of the inspections, in direct breach of the reverse mortgage contract, adding hundreds, if not thousands, of dollars to Plaintiff's reverse mortgage balance over time when compounded by interest on the fees.

43.     Paragraph 6 of Mr. Ray's Mortgage states:

> Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times **provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property**. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

44.     Nowhere does the contract permit inspections to be conducted without notice to Mr. Ray, and nowhere does the contract allow inspection fees to be assessed on Mr. Ray's account on a regular and routine basis. Mr. Ray has never abandoned the subject property.

45.     Champion's automated system orders property inspections without regard to reasonableness or need. Those inspections are then conducted without notice to Mr. Ray and others nationwide in direct breach of the reverse mortgage contract. Champion has and continues to improperly profit from these inspections at borrowers' expense in direct and knowing breach of the reverse mortgage contract.

46.     Upon information and belief, Champion continues to utilize an automated system as described in this Complaint to order inspections, and conduct those inspections without notifying Mr. Ray and other borrowers nationwide designed for the sole purpose of increasing profits, and with total disregard for whether the inspections are reasonable or necessary.

47.     Champion's system of assessment of fees for these inspections on borrowers'

accounts is improper as demonstrated by the frequency with which they are performed. If an initial inspection report shows that the property is occupied and in good condition, as should have been shown with Mr. Ray's home, which was continuously occupied and in good condition at all times relevant hereto, it is unreasonable, unnecessary, inappropriate and in direct breach of the reverse mortgage contract, for Champion to order additional, systematic inspections in quick succession without notice, and of course to charge Mr. Ray for those inspections.

48.     Plaintiff brings these class action claims to recover damages and other relief available at law and in equity on behalf of himself and other vulnerable senior homeowners who have purportedly gone into default on reverse mortgage loans and been charged unnecessary and unreasonable property inspection fees.

49.     Property inspection fees have added hundreds or thousands of dollars to Mr. Ray's reverse mortgage balance over time, compounded by interest on the fees.

50.     The unnecessary and unreasonable property inspection fees added to Mr. Ray's indebtedness and/or reduced the equity he had in the property unnecessarily.

51.     Plaintiff seeks monetary damages, restitution, declaratory and injunctive relief against Champion on behalf of himself and the thousands of other similarly situated borrowers victimized by Champion's scheme.

52.     This Class action challenges Champion's policy of ordering, conducting and charging for property inspections that are imposed arbitrarily, excessive in frequency and price, unnecessary, unreasonable, in direct violation of HUD servicing guidelines, and otherwise unlawful without the contractually required notice to the borrower.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action, on behalf of himself and all others similarly situated,

as a Class action under Rule 23 of the Federal Rules of Civil Procedure.

54.    The Classes Plaintiff seeks to represent (collectively, the "Classes") are defined as

follows:

**National Class**

All residents of the United States of America who had a reverse mortgage
serviced by Champion and whose accounts were assessed fees for property
inspections for which the resident received no prior notice continuing through
the date of final disposition of this action (the nationwide "Class").

**Alabama Class**

All residents of the state of Alabama who had a reverse mortgage serviced by
Champion and whose accounts were assessed fees for property inspections for
which the resident received no prior notice continuing through the date of final
disposition of this action (the "Alabama Sub-Class").

55.    Excluded from the Classes are Champion's officers, directors, affiliates, legal

representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Classes

are any judges, justices, or judicial officers presiding over this matter and the Members of their

immediate families and judicial staff.

56.    Plaintiff reserves the right to amend the Class definitions if discovery and further

investigation reveals that the Classes should be expanded or otherwise modified.

57.    Plaintiff reserves the right to establish sub-Classes as appropriate.

58.    This action is brought and properly may be maintained as a Class action under the

provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(l), (b)(2) or (b)(3), and

satisfies the requirements thereof. As used herein, the term "Class Members" shall mean and

refer to the Members of the Class.

59.    Numerosity: On information and belief, thousands of reverse mortgagors

nationwide, and thousands reverse mortgagors in Illinois, Alabama and nationwide, who have defaulted on an ancillary obligation under the terms of their mortgage, have been charged inspection fees conducted more than once in a 25 day period or without prior notice. The proposed Classes are each so numerous that individual joinder of all Members is impracticable. The identity of these class members is ascertainable.

60.    Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Mr. Ray and the Class Members, and those questions substantially predominate over any questions that may affect individual Class Members. Common questions of fact and law include whether Champion:

(a)    Ordered and assessed fees for repeated, frequent property inspections without prior notice to the reverse mortgagor or regard to their reasonableness or necessity;

(b)    Breached the reverse mortgage by ordering and charging borrowers for property inspections without prior notice or regard to their reasonableness or necessity; and

(d)    Has been unjustly enriched by ordering and charging borrowers for property inspections without prior notice or regard to their reasonableness or necessity.

61.    Typicality: Mr. Ray's claims are typical of the claims of the Members of the Classes. Mr. Ray and all Members of the Classes have been similarly affected by Champion's actions.

62.    Adequacy of Representation: and Mr. Ray will fairly and adequately represent and protect the interests of the Classes. Mr. Ray has retained counsel with substantial experience in prosecuting complex and Class action litigation. Mr. Ray and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Mr. Ray will participate in the litigation, discovery and attend any Court hearings requiring his presence.

63. Superiority of Class Action: Mr. Ray and the Members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all Members of the Classes is impractical. The amounts at issue would not be economical to litigate individually. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Defendant's common course of conduct. The Class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a Class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members.

## COUNT I
## BREACH OF CONTRACT
### (Alabama Class and Nationwide Class)

60. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61. Champion is bound by the terms of Mr. Ray's reverse mortgage contract.

62. Pursuant to the reverse mortgage contract, Champion was required to provide prior notice specifying that an inspection was ordered, conducted and will be charged, along with the purpose for all inspections.

63. Under the terms of their mortgage, Plaintiff was not obligated to pay inspection fees for inspections that were not properly noticed, conducted more than once in 25 days, or were otherwise unnecessary.

64.     Champion breached the mortgage contracts of Plaintiff and Members of the Classes by charging their accounts inspection fees for which no prior notice specifying a purpose for the inspection was provided.

65.     Additionally, Champion breached, Mr. Ray's and the Class's reverse mortgage contract by:

      (a)     Using an automated system that did not adequately consider the need for an inspection;

      (b)     Ordering property inspections more frequently than allowed;

      (c)     Imposing charges for property inspections on Plaintiff and/or Members of the Classes that are not permitted by agreement, applicable law or regulation.

66.     As the direct, proximate and legal result of Champion's actions which constitutes a breach of the reverse mortgage contract, Plaintiff and the Classes have suffered damages, including but not limited to the unlawful inspection fees added to each reverse mortgage account resulting in hundreds or thousands of dollars added to each reverse mortgage balance over time, compounded by interest on the charges and are entitled to the relief sought herein for such breaches.

## COUNT II
## UNJUST ENRICHMENT
### (Alabama Class and Nationwide Class)

67.     Plaintiff incorporate all preceding paragraphs as if fully set forth herein.

68.     Champion received benefits from Plaintiff and Class Members, in the form of unlawful inspection fees and funds earned on interest on those fees.

69.     Champion received financial benefits in the form of increased interest income due to its own deliberate and purposeful development of a system routinely and systematically

assessing fees for property inspections, without the required notice and regardless of whether the inspection was reasonable and necessary.

70.    As a result, Champion has collected money and has been unjustly enriched by the unlawful inspection fees it has charged and interest on those fees.

71.    As a result, Mr. Ray and thousands of Class Members nationwide have reverse mortgage balances that are more than they should be, but for Champion's practices.

72.    As a result, Plaintiff and the Class have conferred a benefit on Champion.

73.    Champion had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

74.    Champion will be unjustly enriched if it is allowed to retain the inspection fees and interest charged on those fees, and each Class Member is entitled to recover the amount by which Champion was unjustly enriched at his or her expense.

## COUNT III
## NEGLIGENCE in the alternative
### (Alabama Class and Nationwide Class)

75.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76.    Champion sets guidelines for managing its portfolio of reverse mortgages and those guidelines are imported into ReverseServ™ developed, Celink. Reverse mortgages serviced by Champion are then automatically managed by the platform according to those guidelines. Among other things, the guidelines instruct the platform when and how to order property inspections and to impose default-related fees, including inspection fees. As a result, the ReverseServ™ platform orders inspections and assesses fees for inspections and other default-related services on borrowers' accounts through these systems which do not adequately consider or account for whether the process violates the terms of the Note or the Security

Instrument, HUD requirements, and significantly, whether there is a reasonable need for the inspections.

77.    In the alternative, Plaintiff and the Classes allege Champion negligently set guidelines for managing its portfolio of reverse mortgages and into the ReverseServ™ platform, causing inspections and assessment of fees for inspections and other default-related services on borrowers' accounts which do not adequately consider, or account for whether the process violates the terms of the Note or the Security Instrument, HUD requirements, and significantly, whether there is a reasonable need for the inspections.

78.    Champion had a duty to exercise reasonable care in set guidelines for managing its portfolio of reverse mortgages and into the ReverseServ™ platform.

79.    Champion failed to exercise reasonable care in setting those guidelines.

80.    Champion's failure to exercise reasonable care in setting those guidelines constitutes negligence.

81.    As a result, Plaintiff and the Classes have suffered damages including but not limited to, hundreds or thousands of dollars added to each reverse mortgage balance over time, compounded by interest on the charges.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.    An order certifying the Class and Sub Class and appointing Plaintiff and their counsel to represent the Classes;

B.    Monetary relief and/or equitable relief in an amount to be determined at trial;

C.    Interest on any Judgement rendered;

D.      Attorneys' fees and costs of suit, including costs of notice, administration, and

expert witness fees; and

E.      Such other legal or equitable relief, including injunctive and/or declaratory relief,

as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

Dated:  February 17, 2016

Joseph "Jay" H. Aughtman
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Phone:  (334) 215-9873
Fax:      (334) 213-5663
jay@aughtmanlaw.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
(*pro hac vice to be filed*)
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:      (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron C. Hemmings,
(*pro hac vice to be filed*)
Hemmings & Stevens, P.L.L.C.
5540 McNeely Drive, Suite 202
Raleigh, NC 27675
Phone:  (919) 277-0161
Fax:      (919) 277-0162
ahemmings@hemmingsandstevens.com

*Attorneys for the Plaintiff and Classes*